Good morning. Excuse my coughing all the way through everything today. I have asthma. Good morning, gentlemen. May it please the court, my name is Linda Hamilton, and I represent the appellant, Erick Morales, in this case. In this matter, Mr. Morales agrees with the government that this is a case about constructive possession. We also agree with the government that this is a situation of plain error review. In this matter, although my predecessor counsel made a Rule 29 motion, he did not renew it at the conclusion of the case as required. Nonetheless, we believe plain error is clearly here because this government has failed to prove all of the elements essential to the case, and in particular, the element of intent. The key question before, gentlemen, is can a mere messenger of information exercise dominion and control as required by constructive possession doctrine? Can we focus for just one second on the ammunition? I couldn't hear what you said. Focus on the ammunition for a second and not on the firearm. Sure. The ammunition is found in his room with his fingerprints on it. Correct. Why doesn't that establish actual possession? Because we learned that Erick, my client, was placed on state court probation approximately three years ago. At the time when he was placed on state court probation, he gave all of his ammo, his gun stuff, and so forth to his best friend, Israel Guzman. It would be reasonable to imagine that he gave away items and that his fingerprints would normally appear on those items. So with respect to that ammunition, you're saying that no reasonable juror could conclude that he possessed it because his defense was, I think, I gave the ammunition to a friend and then he brought it back for my dad. Right. Exactly. Okay. Okay. Additionally, in this particular matter, we have no fingerprints whatsoever on the AK-47. This is a very fact-driven case. There's no question about it. We know that the true purchaser of the gun was a man named Omar Guzman, an acquaintance of the appellant's. And although my client went to the location where the gun was for sale and looked at it and wished about it and dreamed about it, he nonetheless stepped back from temptation and did not make that purchase. And instead, he referred this potential good deal to his friend, Omar Guzman, who, in fact, did make that purchase. Now, in this particular matter, we agree that this is not about ownership. Ownership is not the issue here. We know that there is joint dominion and control that is frequently exercised. The issue here is intent, and whether the circumstances in this case clearly establish that there was a reasonable connection between my client, a messenger of information, and the ammunition and the gun. Now, we learned that dad of Eric, Mr. Ray Morales, he wanted to go shooting, and he asked Eric if he would arrange to borrow an AK-47 and ammo from the acquaintance, Omar. My client agreed to do this. He was being a mere messenger. Every single person in this courtroom, at one time or another, has been asked to do a similar job as a messenger. I have an older son who has a lot of scouting gear. People are always asking me, would you ask Sean if you can borrow the propane cap stove for a scout outing? This happens all the time. It is a common event. Merely being a messenger of such information is not exercising dominion and control. The government asked a good question. They asked, well, why wasn't the gun and ammunition placed in, like, the parents' bedroom? We know that these are people who live in a three-bedroom home in Scottsdale. It's mom and dad in one bedroom, Eric in another bedroom, and little sis in yet another bedroom. And the answer is because of the circumstances. This was a Saturday morning at 7 a.m. Eric, who had already made arrangements for the gun and the ammo to be dropped off for dad, had also, smartly enough, thought to himself, I don't want to be around this stuff at all. I don't want to be around this, and so this is a good occasion for me to take the shuttle from Phoenix to Nogales to buy cheap pharmaceuticals. And so he's out the door at 7 a.m. on a Saturday morning. He hears the shower running in mom and dad's bedroom area, concludes it's probably dad taking a shower. He's out the door, and as he's out the door, his friend Guzman is coming in the door. He says, you know, just put stuff over there, just put it over there. When Guzman actually gets in the house, he encounters Ray Morales, the dad, the borrower. Ray also directs him, he says, put the stuff in Eric's room. It's only going to be there a short time. We know that from common sense, on a Saturday morning where people are not even up yet, you're not going to be directing your friend to go into mom and dad's bedroom. You're also not going to be directing your friend to leave the gun and ammo on the dining room table or the kitchen area where little sis and the nephew might find it and get into trouble. We also know in this case that there was a state probation officer. Eric was on probation. That's why he gave away his gun stuff. He was on state court probation. We know that a state probation officer made random unannounced visits all the time and that there was never any question, there was no gun or ammunition ever discovered that was improper by that state court probation officer. We know that borrowed items are usually kept separate and apart and not commingled. We know this from common experience. This is to facilitate ID and later return. You have to ask yourself, bottom line here, if Eric Morales was borrowing the ammunition and the gun for himself, he certainly took elaborate precautions and steps to be far, far away from that gun and ammunition. He's already arranged to go on the shuttle. It's the crack of dawn from Phoenix to Nogales. He's gone for the whole day and doesn't even return until 9 p.m. He's not there when the search warrant is executed. He's not there when the gun and ammunition are actually in the house. He's gone. He's probably out here without the gun or the bullets.  When the investigation goes on, they want to get some evidence. And they will execute that decision all the time. Is this case tried to a jury? Yes. What you say is very plausible. Thank you. I assume you said something like that to the jury. I wish it had been me. But it wasn't me. It was a ---- Mr. Morales wishes it had been you also. That's so nice of you to say that. Thank you. But in this particular matter ---- But that requires a number of inferences one way or another. It does. It does. And we would submit here that the government has not met its burden of proof and that basically the Rule 29 motion should have been granted because the government, however well-meaning they may be, in this particular situation, was not able to establish intent. It's not good enough that the client went over to the Stewart residence and really fought hard and agonized over maybe purchasing that gun. That's no different than me leaving Weight Watchers and going to a bakery and wishing and dreaming that I could buy pastry. But then I don't. And instead I call a skinny friend and say, there's this wonderful new bakery in Mesa, you ought to try it. There's no difference between what I'm positing and what Eric did here. And so I'll just reserve what little I have left. And thank you very much, gentlemen. Thank you, Kath. Would it bug you if I sit here? May it please the Court. Mark Okanovich on behalf of the United States. I'm an assistant United States attorney in the District of Arizona and represent the United States in this matter. With all due respect to opposing counsel, this is not before a jury anymore, and all inferences, as Judge Noonan was pointing towards, have to be considered in the light most favorable to the government. And all inferences have to be taken, all reasonable inferences, interpreted in a way to support the verdict. A jury heard the argument, and with all due respect to opposing counsel, even had opposing counsel made a persuasive closing statement as you just had to the jury, the evidence in this case was overwhelming of constructive possession. As Judge Hurwitz has pointed out, there were fingerprints on the ammunition. The defendant has a story, but the jury heard that story and the jury didn't believe the defendant. There are two cases that are post-Nevels that we cite in our brief, and in both of those cases there is less evidence of constructive possession in either Tucker or Vasquez to support constructive possession in those cases than there is in this case. Even defense counsel is forced to concede that there was a signed bill of sale for the exact AK-47 variant that was leaned against the wall between where he slept at night and his dresser that was in the ammunition. Not only did it have his fingerprints on it, it was commingled with things that were admittedly his own. There was overwhelming evidence at the time the Rule 29 motion was made, and there is even more evidence after defendant conceded several issues when he was taking the stand and testifying, unless the Court has any questions. I'm just going to wrap this up with a thought from history, and it's a saying that applies in this case, and that's don't kill the messenger. You may recall in historical times, you know, if a messenger brought good news to the king of a triumph in a battle, he might get a special reward, a gold coin or something. But if he brought bad news, off with his head. So it was a chancy job being a messenger, and I guess it's a chancy job for my client as well to be a messenger. But that's why we have that expression, don't kill the messenger, because we distinguish between the principles and the person who is just a mere conduit of information. We distinguish that, and it's gone down throughout history as don't kill the messenger. And we don't want you in this case to kill my client who was a mere messenger. And not only do we need to think back to history, but we need to look forward to how very changing our world is in the 21st century with social media and all the different forms of new kinds of communication that are coming into vogue. And because of that, you have to be real careful, I think, when you look at this case and say in the most abstract form, this is a person who's a messenger. To what extent are we going to hold a messenger between two legitimate people, two legitimate events. This wasn't like facilitating dealing drugs or something. These were Mr. Guzman who had a legitimate interest in a gun, dad who wanted to borrow a gun, perfectly legit. To what extent are we going to make a messenger of legitimate information responsible simply because the messenger was not allowed to be a possessor. That's the real key here. And so I ask you to think real carefully about this and to remand with instructions to the lower court and to find in my client's favor. Thank you so much. Thank you, counsel. Thank you. Thank you both. The case disargued will be submitted. The court will stand in recess today.
judges: Reinhardt, Noonan, Hurwitz